UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

WINDY LUCIUS

    Plaintiff,
vs.

AMC ENTERTAINMENT HOLDINGS, INC.,
AMC ENTERTAINMENT, INC., and
AMERICAN MULTI-CINEMA, INC.

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Windy Lucius, by and through her undersigned counsel, hereby files this Complaint and sues Defendants AMC Entertainment Holdings, Inc., AMC Entertainment, Inc., and American Multi-Cinema, Inc. for injunctive relief, attorney's fees and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. Part 36, and alleges as follows:

## JURISDICTION & PARTIES

1.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §1331, and 28 C.F.R. § 36.201(a).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant transacts business in this District, and the acts constituting the violation of the ADA occurred in this District.

3.    Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and

2202.

4. Plaintiff Windy Lucius ("Plaintiff") is a resident of the state of Florida and resides within the USDC, Southern District of Florida and is *sui juris*. The Plaintiff suffers from what constitutes as a "qualified disability" under the ADA. The Plaintiff is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing her world and adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012(1)(A) and in 42 U.S.C. 3602, §802(h).

5. Defendant AMC Entertainment Holdings, Inc. (also referenced as "AMC Holdings" and collectively with AMC Entertainment, Inc. and American Multi-Cinema, Inc. as "Defendants") is a for-profit publicly held NYSE company. The majority shareholder is Wanda Group, a Chinese international conglomerate. AMC Holdings owns and operates movie theaters throughout the United States and Florida through its subsidiary AMC Entertainment, Inc. and indirect subsidiaries. Plaintiff seeks full and equal access to the goods and services provided by AMC Holdings through its movie theaters.

6. Defendant AMC Entertainment, Inc. (also referenced as "AMC Entertainment" and collectively with AMC Entertainment Holdings, Inc. and American Multi-Cinema, Inc. as "Defendants") is a for-profit corporation subsidiary of AMC Holdings. AMC Entertainment owns and/or operates (directly or indirectly through subsidiaries) approximately 1,006 movie theaters ("AMC Theaters"), which showcase 11,091 screens[1], and are located in throughout the United States under the "AMC (movie) Theater(s)" brand. Plaintiff seeks full and equal access to the goods and services provided by AMC Entertainment through its AMC Theaters.

---

[1] AMC Entertainment Holdings, Inc. Form 10-K for 2018. U.S. Securities and Exchange Commission (Report). Retrieved September 25, 2019.

2

7. Defendant American Multi-Cinema, Inc. (also referenced as "American Multi-Cinema" and collectively with AMC Entertainment Holdings, Inc. and AMC Entertainment, Inc. as "Defendants") is a subsidiary of AMC Entertainment. American Multi-Cinema operates a chain of movie theaters in the State of Florida under the "AMC Theater" brand. Plaintiff seeks full and equal access to the goods and services provided by American Multi-Cinema through its AMC Theaters.

8. The Defendants' chain of AMC Theaters operate on the multiplex model which has been expanded and revised as the megaplex model (which is designed to accommodate thousands of movie-viewing customers). The standard multiplex theater location houses 24 individual theaters, but the number of theaters may vary. The individual theaters (each of which contain a movie screen) are joined by a box-office, lobby, and concession stand and restroom facilities. Each AMC Theater location is open to the general public.

**FACTS**

9. Plaintiff Windy Lucius enjoys the movie theater experience, and is a customer of movie theaters such as the Defendants' AMC Theaters. She is an AMC Stubs member.

10. Within Defendants' AMC Theaters, Defendants offer a multitude of movies throughout the day and evening for viewing by the general public. Therefore, each of Defendants' AMC Theaters are places public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §§12182, §12181(7)(C); 28 C.F.R. Part 36.

11. Each of the Defendants meet the definition of a "public accommodation" because they are each entities who directly or indirectly (through subsidiaries) own and operate (many) many a motion picture houses, each of which is "[A] motion picture house, theater, concert hall,

3

stadium or other place of exhibition or entertainment" as defined at 42 U.S.C. §12181(7)(C) and 28 C.F.R. §36.104.

12. At all times material hereto, as part of its chain of motion picture houses (AMC Theaters), the Defendants (directly or indirectly through subsidiaries) owned and operated the AMC Aventura 24 multiplex movie theater at 19501 Biscayne Boulevard, Aventura Florida 33180 and is referred to throughout as "AMC Aventura."

13. At all times material hereto, as part of its chain of motion picture houses (AMC Theaters), the Defendants (directly or indirectly through subsidiaries) owned and operated the AMC Pembroke Lakes 9 multiplex movie theater at 12085 Pines Boulevard, Pembroke Pines, Florida 33026 and is referred to throughout as "AMC Pembroke Lakes."

14. Through Defendants' website (www.amctheaters.com) AMC Theaters Defendant advertises that assistive devices for moviegoers are available at all AMC Theaters through the link https://www.amctheatres.com/assistive-moviegoing: "Assistive Listening Devices (ALDs) are available for all movies at AMC locations."

15. Defendants' website states that audio description devices are available thought the "Fidelio system." Defendants' website states that the audio description devices provide a descriptive narration of the movies from any seat within each movie theater within the Defendants' multiplex theaters. Defendants tout that Fidelio system devices work wirelessly within all AMC Theaters, refer to https://www.amctheatres.com/assistive-moviegoing/guest-guide.

16. According to the Defendants' website, the "Fidelio system" audio description device is available at each theater. When requested by a blind or visually impaired patron, a theater employee is supposed to program an audio description receiver to play the audio

description for the desired movie and give that audio description receiver to the movie patron along with headphones through which to listen to the audio descriptions.

17. Since Defendants have advertised that AMC Theaters offer blind and visually impaired patrons the opportunity to enjoy the movie theater experience with audio descriptions, Plaintiff has chosen to patronize AMC Theaters with her friends and family in order to be entertained.

18. The Plaintiff patronized various AMC Theaters at various dates and times (as delineated below) anticipating that she would be supplied an audio description device to comprehend her movie choice. Yet in each instance, the audio description device which the Plaintiff received was inoperable or malfunctioned resulting in Plaintiff's being unable to enjoy the movie theater experience.

19. Failure to maintain the audio description devices in working order for the visual impaired is tantamount to failure to provide audio description devices. As a result, Defendants have jointly and severally discriminated against individuals who are visually impaired.

20. While in each instance, the AMC Theater staff gave Plaintiff a free pass to return to the theater at a later date. However, in each instance Plaintiff was unable to comprehend the movie which she and her companion had traveled to the AMC Theater to enjoy.

21. Furthermore, on returning to the same AMC Theater to use the free pass from the previous ill-fated attempt to patronize the theater, Plaintiff was again met with broken or malfunctioning audio description device, resulting in yet another evening of thwarted entertainment.

22. Despite stating within its website that audio description devices are available within its AMC Theaters, Defendants have failed to provide audio description devices in

working order, therefore their auxiliary aids are not readily accessible to and usable by individuals who are visually impaired.

23.   Defendants have failed to furnish auxiliary aids and services to insure effective communication with patrons who are visually impaired. By their failure Defendants have discriminated against the visually impaired in derogation of the ADA.

Visit One:

24.   On May 15, 2019, Plaintiff visited the AMC Aventura location and purchased tickets to the movie "Longshot."  Following purchasing of the tickets to the movie Longshot and entry to the theater, Plaintiff requested an audio description device, but on receipt of that device, it malfunctioned. Therefore Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie Longshot.

Visit Two:

25.   On May 29, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit One as admission to the movie "Aladdin." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

Visit Three:

26.   On June 5, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit Two as admission to the movie "Ma." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff

informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie "Ma."

Visit Four:

27. On June 26, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit Three as admission to the movie "Men In Black." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

Visit Five:

28. On July 10, 2019 Plaintiff visited the AMC Pembroke Lakes location and used the pass from Visit Four as admission to the movie "Toy Story 4." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie "Toy Story 4."

Visit Six:

29. On July 19, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit Five as admission to the movie "The Lion King 2019." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

Visit Seven:

30. On July 31, 2019, Plaintiff visited the AMC Aventura location and used the pass from Visit Six as admission to the movie "Crawl."  Plaintiff requested an audio description

device, but on receipt of that device, it malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie Crawl.

Visit Eight:

31. On August 14, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit Seven as admission to the movie "Hobbs and Shaw." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie "Hobbs and Shaw."

Visit Nine:

32. On October 2, 2019 Plaintiff visited the AMC Pembroke Lakes location and used the pass from Visit Eight as admission to the movie "AD Astra." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

Visit Ten:

33. On October 25, 2019 Plaintiff visited the AMC Pembroke Lakes location and used the pass from Visit Nine as admission to the movie "Gemini." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

Visit Eleven:

34. On December 21, 2019 Plaintiff visited the AMC Aventura location and used the pass from Visit Ten as admission to the movie "Queen and Slim." Plaintiff requested an audio description device, but that device malfunctioned and Plaintiff was unable to comprehend the movie. Plaintiff informed an AMC Theater staff member and received a pass to the AMC Theaters for another time. Plaintiff then went home without enjoying the movie.

As Related to All Ten Visits:

35. In all eleven visits to Defendants' AMC Theaters, Plaintiff was unable to utilize the audio description device provided to fully comprehend each of the ten movies because Defendants have failed to properly maintain the audio description devices within their AMC Theaters. In each instance, Plaintiff left the AMC Theater suffering from loss of dignity, mental anguish and other tangible injuries.

36. Based on eleven out of eleven visits, it is clear that audio description devices for the visually impaired within the Defendants' movie theaters are not properly maintained and are unusable.

37. While Defendants compensated Plaintiff by providing a pass to another movie, each time Plaintiff went back to be entertained using the movie pass, the audio description device provided was so poorly functional that her utilization of the audio description device contained barriers that prevented her ability to comprehend the movie entertainment.

38. The Plaintiff was unable to experience as similar a movie going experience as sighted moviegoers with consideration for the assistive technologies available and provided as a matter of course by movie theaters.

39. The repeated failure to provide effective audio description equipment and services

9

at AMC Theatres has exhausted Plaintiff and has resulted in her segregation from the movie-going public.

40. Because she could not comprehend the movies, Plaintiff has been deterred Plaintiff from patronizing AMC Theaters.

41. Thus, Plaintiff has been denied full and equal access to Defendants' places of public accommodation due to her disability.

42. Plaintiff will continue to suffer irreparable injury from Defendants' intentional acts, policies, and practices set forth herein unless enjoined by the court.

43. Defendants are violating basic equal access requirements under the ADA by failing to provide functioning audio description devices for blind and visually impaired patrons. Defendants have failed to implement policies and procedures to ensure that their audio description devices are charged and maintained and that the devices are correctly programmed.

44. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

45. Notice to the Defendant is not required as a result of the Defendants' failure to cure the violations.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

46. The Americans with Disabilities Act ("ADA") was enacted and effective as of July 26, 1990 and has been protecting disabled persons from discrimination due to disabilities for 30 years.

47. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of places of public accommodation. 42 U.S.C. § 12182.

48. Title III regulations require that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1), 42 U.S.C. §12182(b)(2)(A)(iii).

49. The regulations set forth numerous examples of "auxiliary aids and services," including "accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. §36.303(b). The term "auxiliary aids and services" also includes the "[a]cquisition or modification of equipment or devices; and [o]ther similar services and actions." *Id.* And, particularly significant here, the title III regulation further requires that "[i]n order to be effective, *auxiliary aids* and services *must be provided in accessible formats and in a timely manner*.." *Id.* (emphasis added).

50. The Department of Justice has recognized that, despite the longstanding obligation to provide effective communication, neither closed movie captioning nor audio description is universally available at movie theaters across the United States. The Department further recognized that the availability to assistive devices within movie theaters has been largely due to the successful litigation brought by State attorneys general or private plaintiffs representing individuals with disabilities. The Department has stated that, because the ADA's effective communication requirements apply to all public accommodations (including movie theaters), it was incumbent on the Department to issue a ruling on the matter to standardize the requirements of movie theaters in this area. Therefore, the Department issued ruling 81 FR 87348, effective January 17, 2017, which states that Public Accommodations with movie theater auditoriums showing digital movies must provide closed movie captioning and audio description

in such auditoriums by December 2, 2018[2].

51. Defendants advertise that they provide patrons a service through the utilization of audio description devices for the visually impaired which are equipped with technology so that its customers may independently enjoy the entertainment offered at their AMC Theaters. But because Defendants have chosen not to maintain the audio description devices in a working condition, visually impaired patrons are unable to independently enjoy the entertainment offered at AMC Theaters.

52. As Public Accommodations, Defendants must furnish auxiliary aids or services that enable such individuals to equally and independently benefit from the entertainment of its movie theaters unless doing so would result in a fundamental alteration or undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a).

53. Additionally, public accommodations must maintain in operable working condition those features of equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211.

54. As a result of the inadequate maintenance of the audio description devices within the Defendants' movie theaters and by the barriers to access inherent when those audio description devices are not in working condition (when removal of those barriers is readily achievable by simply insuring that the assistive devices are maintained in working condition), Defendants have denied individuals with disabilities who are visually impaired full and equal enjoyment of goods, information, and services that the Defendant has made available to the general public, in derogation of 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

---

[2] https://www.federalregister.gov/documents/2016/12/02/2016-28644/nondiscrimination-on-the-basis-of-disability-by-public-accommodations-movie-theaters-movie

55. Plaintiff Windy Lucius has suffered an injury in fact. Pursuant to 42 USC §12181(7)(C), the Defendants' movie theaters are *places of public accommodation* under the ADA because they are "motion picture house(s)." As such, Defendants must be in compliance with the ADA.

56. The actions of Defendants were and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. As a visually-impaired individual, Plaintiff Windy Lucius has been and continues to be denied full and equal access to Defendants' AMC Theater services. Defendants have failed to take the necessary steps to provide full and equal access to blind and visually-impaired patrons, and Defendants' violations of the ADA are ongoing. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

57. As a result of the Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

58. Plaintiff has retained the law offices of J. Courtney Cunningham PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause. Plaintiff is entitled to have her reasonable attorneys' fees, costs and expenses paid by the Defendants.

## **COUNT II – DECLARATORY RELIEF**

59. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that that by failing to maintain and provide audio description equipment and services, Defendants deny have denied access to their AMC Theaters. As such Defendants have failed to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*

60. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant the Plaintiff and others similarly situated relief, including an order to require that the Defendant adopt and implement a system to maintain in good working order a reasonable number of audio description devices for the visually impaired within its movie theater locations such that patrons who are visually impaired will be able to enjoy the movie entertainment as does the general public.

61. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**WHEREFORE**, Windy Lucius hereby prays for judgment against Defendants AMC Entertainment Holdings, Inc., AMC Entertainment, Inc., and American Multi-Cinema, Inc. as follows:

a) The Court issue a declaration that Defendants have discriminated against blind and visually-impaired persons by failing to provide Plaintiff (a visually-impaired individual) with full and equal access to the services, facilities, privileges, advantages, and accommodations of the services at AMC theaters in violation of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*

b) The Court issue a permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, requiring Defendants to take the steps necessary to provide properly functioning audio description equipment and services in their movie theaters for individuals who are blind or visually-impaired.

c) The Court award Plaintiff's reasonable attorney's fees, fees and costs, as authorized by 42 U.S.C. § 12188; and

d) For such other and further relief as it deems necessary, just and proper.

Dated this 9th day of January, 2020.

                Respectfully submitted,

                *s/J. Courtney Cunningham*
                J. Courtney Cunningham, Esq.
                J. COURTNEY CUNNINGHAM, PLLC
                FBN: 628166
                8950 SW 74th Court, Suite 2201
                Miami, Florida 33156
                T:  305-351-2014
                Email: cc@cunninghampllc.com
                *Counsel for Plaintiff*